COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and Retired Judge Brown[*]
Argued at Salem, Virginia


JOHN DAVID McBRIDE
                                   MEMORANDUM OPINION[**] BY
v.   Record No. 1947-02-4         JUDGE RUDOLPH BUMGARDNER, III
                                        AUGUST 5, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                      James H. Chamblin, Judge

           Felipita Athanas, Appellate Defender (Public
           Defender Commission, on briefs), for
           appellant.

           Jennifer R. Franklin, Assistant Attorney
           General (Jerry W. Kilgore, Attorney General,
           on brief), for appellee.


     A jury convicted John David McBride of misdemeanor

embezzlement, Code §§ 18.2-111 and -96.  He maintains the

evidence is insufficient to support his conviction because he

converted real property not personal property.  He also contends

the evidence fails to exclude the hypothesis that one of the

owners may have given him permission to take the property.  We

affirm the conviction.

---

[*] Retired Judge J. Howe Brown, Jr., took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400.

[**] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

We view the evidence and the reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth.  Dowden v. Commonwealth, 260 Va. 459, 467, 536 S.E.2d 437, 441 (2000).  The defendant leased a building from Joan Andes in which to store his plumbing supplies.[1]  The building had been a garage and contained a car lift and an air compressor.  The car lift was bolted to the concrete floor, but the air compressor was simply attached with wires and an air hose.  Andes considered the items "part of the building."

On February 28, 2001, Andes noticed the lift was missing. The defendant told her he had disassembled it and was storing it at his home.  Andes made note to have the defendant return the lift when he vacated the building.  Though not pleased, she did not otherwise object.

The defendant told his employee that he owned everything in the building and wanted to get rid of the car lift and air compressor.  The defendant exchanged the car lift for plumbing work on the building's heating system and at his residence.  He sold the air compressor to the same plumber for $200.

The defendant maintains the car lift and air compressor were real property, not personal property.  Assuming the compressor was affixed to the realty, the trial court held it was severed and became personal property.  Since the defendant

---

[1] At trial, Andes owned the building with one other person. The third owner that signed the lease had since died.

was convicted of misdemeanor embezzlement, we need only conclude that one item was not a fixture to uphold his conviction.

Embezzlement is the fraudulent conversion of personal property entrusted to a defendant for his own purposes. Code § 18.2-111. Green v. Phillips, 67 Va. (26 Gratt.) 752 (1875), established a three-part test to determine if an item is a fixture. The trial court assesses (1) the degree of permanency with which the item is annexed to the real property, (2) the adaptation of the item to the use or purpose to which the property is devoted, and (3) the owner's intent to make it a permanent accession to the land. Id. at 759; State Highway and Transp. Comm'r v. Edwards Co., 220 Va. 90, 94, 255 S.E.2d 500, 503 (1979).

In Danville Holding Corp. v. Clement, 178 Va. 223, 16 S.E.2d 345 (1941), the landowner converted a silk mill into a bakery. In order to operate the bakery, he acquired heavy machinery and securely fastened it to the building such that it could not be removed easily or without great cost. The Court held that the machinery was essential to the purpose for which the building was used. Id. at 236, 16 S.E.2d at 351. The machinery was part of the realty and constituted a fixture.

Whether an item is a fixture is a question of fact. Id. Examples of fixtures include: an air conditioning compressor "built into" the roof of a building, United States Fire Ins. Co. v. Martin, 222 Va. 301, 303, 282 S.E.2d 2, 3 (1981) (defendant

- 3 -

conceded it was fixture); a coal conveyor system installed forty years earlier, railroad tracks used for more than fifty years, and twenty-ton truck scales completely enclosed in a structure the owner erected for that purpose, Edwards Co., 220 Va. at 95-96, 255 S.E.2d at 504 (property essential to the operation of a business); gas mains, Transcontinental Gas Pipe Line Corp. v. Prince William Co., 210 Va. 550, 556, 172 S.E.2d 757, 761 (1970); a city's water works system (gates, pipes, hydrants), City of Newport News v. Warwick County, 159 Va. 571, 603, 166 S.E. 570, 581 (1932); and a steam engine that furnishes power to a factory, Green, 67 Va. (26 Gratt.) at 760.

Important considerations are whether the item was specifically designed for the building, can be removed without injury to the property or building, can be used elsewhere, and was installed for a temporary purpose. 159 Va. at 604, 166 S.E. at 581-82. If property is only useful to a building, i.e., sprinkler system, but not an indispensable part of it, it is not a fixture. Holt v. Henley, 232 U.S. 637, 641 (1914).

The jury found the air compressor was personal property. The record supports this finding. To operate, the air compressor had to be connected to a source of power and air had to be delivered by an air hose. The connection to the building was merely by wires and a hose. The compressor was easily detached, and no evidence suggested the building or the compressor were injured during its removal. While tenants had

- 4 -

used the building for a garage, the defendant simply used it for storage. The compressor was not essential to the purpose for which Andes leased, and the defendant used, the building. It was reasonable for the jury to find the owner did not intend to make the compressor a permanent fixture and it was personalty. The evidence supports the jury's factual finding.

The defendant also maintains the Commonwealth failed to prove he did not have permission from another owner to convert the property. It is the defendant's burden to prove he had permission, and no evidence supports his theory. Moreover, a joint owner could not convert or sell Andes's half-interest. See Raney v. Barnes Lumber Corp., 195 Va. 956, 966-67, 81 S.E.2d 578, 584-85 (1954) (mother and son owned land together, where son never agreed to sell and mother not acting as agent for son, there is no contract to sell property). The jury's verdict is supported by the evidence.

Accordingly, we affirm the defendant's conviction.

Affirmed.

Benton, J., dissenting.

I would hold that the evidence established that both the compressor and the automobile lift were affixed to the realty and that Virginia law does not recognize an embezzlement of realty or fixtures of the realty. Therefore, I dissent.

The principle is well established that

> [i]n the absence of any specific agreement between the parties as to the character of a chattel placed upon the freehold, the three general tests are as follows: (1) Annexation of the chattel to the realty, actual or constructive; (2) Its adaptation to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) The intention of the owner of the chattel to make it a permanent addition to the freehold.

Danville Holding Corp. v Clement, 178 Va. 223, 232, 16 S.E.2d 345, 349 (1941). The Supreme Court further explained the elements of the tests as follows:

> While, under the first test, there must be actual or constructive annexation, the method or extent of the annexation carries little weight, except insofar as they relate to the nature of the article, the use to which it is applied and other attending circumstances as indicating the intention of the party making the annexation.
>
> The second test -- adaptation of the chattel to the use of the property to which it is annexed -- is entitled to great weight, especially in connection with the element of intention. If the chattel is essential to the purposes for which the building is used or occupied, it will be considered a fixture, although its connection with the realty is such that it may be severed without injury to either.

- 6 -

The intention of the party making the annexation is the paramount and controlling consideration. The test of intention is given a broad signification. It does not imply a secret, undisclosed action of the mind of the owner of the property. The intention need not be expressed in words; it may be inferred from the nature of the article affixed, the purpose for which it was affixed, the relationship of the party making the annexation and the structure and mode of annexation.

"If the proprietor of the land himself annexes the chattels, a doubt as to his intention to annex them permanently will in most cases be resolved in favor of such intent, upon the theory that his design is to place permanent improvements upon his property, which will enhance its usefulness and consequently its market value. Such fixtures are in general real fixtures and become a permanent part of the land or buildings to which they are attached."

Id. at 232-33, 16 S.E.2d at 349 (citation omitted).

The lease between John McBride and the owner of the realty provides that McBride "agrees to rent that certain space . . . known as a garage building" and further provides that McBride leased "with the option of a garage business." The evidence also proved that when McBride came into possession of the building under the lease agreement the automobile lift was bolted to the floor and the air compressor was attached to the building by wires and an air pipeline. The automobile lift and air compressor are items generally found as fixtures in a building that is used as a garage. If there was any doubt about the intention of the owner of the realty when leasing the garage

- 7 -

with those fixtures, it is dispelled by the testimony of the owner that she "considered them part of the building."

The Fourth Circuit has noted the traditional limitation on larceny as follows:

> Embezzlement is a statutory crime which did not exist at common law. Common-law larceny offenses extended only to conversions of property involving a wrongful taking and asportation of the property, as well as wrongful control or detention. A defendant who obtained possession of property lawfully, in a fiduciary capacity, before converting it could not be convicted at common law. Embezzlement statutes were enacted to remedy the common law's deficiency.

United States v. Stockton, 788 F.2d 210, 215 n.4 (4th Cir. 1986). Likewise, embezzlement is a statutory crime in Virginia, Moss v. Harwood, 102 Va. 386, 389, 46 S.E. 385, 386 (1904), and it "was devised by legislatures to address an inadequacy in the common law of larceny." Gwaltney v. Commonwealth, 19 Va. App. 468, 474, 452 S.E.2d 687, 690-91 (1995).

The statute defines the crime of embezzlement in Virginia as follows:

> If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement. Embezzlement shall be

- 8 -

> deemed larceny and upon conviction thereof,
> the person shall be punished as provided in
> [Code] § 18.2-95 or § 18.2-96.

Code § 18.2-111 (emphasis added).

Interpreting this statute, which was in effect at the time of McBride's indictment and conviction, the Supreme Court explained the legislative intent to narrowly construe the statute and held as follows:

> In 1994 . . . the General Assembly amended
> Code § 18.2-111 and deleted the language
> that permitted a defendant who had committed
> embezzlement to be "indicted as for
> larceny."  The amendments further eliminated
> the phrase that made proof of embezzlement
> "sufficient to sustain the charge" of
> larceny and the requirement that the
> Commonwealth elect, upon motion of the
> defendant, the specific statutory theory of
> the crime of larceny it intended to rely
> upon for a conviction.  The first sentence
> of the statute now provides that any person
> committing the described acts "shall be
> guilty of embezzlement."  Code § 18.2-111.
> The only reference to larceny in Code
> § 18.2-111 is in its second sentence, which
> now states, "[e]mbezzlement shall be deemed
> larceny and upon conviction thereof, the
> person shall be punished as provided in [the
> larceny code sections]."
>
>     . . . [T]hese amendments were not
> merely intended to eliminate "surplusage"
> from Code § 18.2-111 as the result of the
> 1975 enactment of Code § 19.2-230 giving
> defendants the right to request a bill of
> particulars.  "As a general rule, a
> presumption exists that a substantive change
> in law was intended by an amendment to an
> existing statute."  Thus, in construing a
> state that has been amended by the General
> Assembly, we presume that the legislature
> acted with full knowledge of the law as it
> affected the subject matter.

- 9 -

> . . . [T]he 1994 amendments were not narrowly tailored to eliminate unneeded language, but constituted a complete reformulation of the statute. Most particularly, the elimination of the permissive provision that embezzlement could be "indicted as for larceny" evinces a clear legislative intent to prohibit that former practice and require specificity in the indictment.
>
> . . . [T]he continued association of embezzlement and larceny in the second sentence of Code § 18.2-111 is to "classify embezzlement as a larceny crime for the limited purpose of punishment according to the larceny statutes."

Commonwealth v. Bruhn, 264 Va. 597, 602-03, 570 S.E.2d 866, 869 (2002).

Code § 18.2-111 by its express terms applies to embezzlement of "personal property, tangible or intangible." Thus, the Supreme Court of Virginia has consistently held that a person is guilty of the statutory offense of embezzlement under Code § 18.2-111 when that person is "entrusted with possession of another's personalty . . . [and] converts such property to his own use or benefit." C.D. Smith v. Commonwealth, 222 Va. 646, 649, 283 S.E.2d 209, 210 (1981) (emphasis added). Fixtures, on the other hand, are a part of the realty and are not personal property.

> Penal statutes are to be strictly construed against the Commonwealth and in favor of a citizen's liberty. They cannot be extended by implication but must be confined to those offenses proscribed by the language employed. Further, before an accused can be punished, "his case must be

- 10 -

> plainly and unmistakably within the
> statute," and he is entitled to the benefit
> of any reasonable doubt concerning the
> statute's construction.

Harward v. Commonwealth, 229 Va. 363, 365, 330 S.E.2d 89, 90

(1985).  The evidence in this case did not plainly bring the

issue within the ambit of the statute and, thus, was not

sufficient to sustain the conviction.

Applying these principles, I would reverse the conviction

and dismiss the indictment.